UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re: Law Office of Edward J. Lake, PC,
d/b/a The Lake Law Firm,

Debtor.                                                                  Case No. _____

Chapter 11 (Subchapter V)
-------------------------------------------------------------x

*CLERK*
*U.S. BANKRUPTCY COURT*
*EASTERN DISTRICT OF NEW YORK*
*2025 DEC -3 P 2: 50*
*RECEIVED*

### DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM ORDERS AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL, GRANTING ADEQUATE PROTECTION TO SECURED PARTIES, AND SCHEDULING A FINAL HEARING

COMES NOW, Law Offices of Edward J. Lake P.C. d/b/a The Lake Law Firm (the "Debtor"), by and through the undersigned counsel, hereby moves for entry of interim orders under sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor to use cash collateral, granting adequate protection, and scheduling a final hearing.

In support of this Motion, the Debtor relies on the Declaration of Edward J. Lake (the "First Day Declaration") filed contemporaneously herewith and respectfully states as follows:

### I. JURISDICTION AND VENUE

1.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicates for the relief requested herein include Bankruptcy Code sections 105(a), 361- 364, 1184, and Bankruptcy Rules 4001 and 6003. To the extent any part of

this Motion is determined to be non-core, the Debtor consents to entry of a final order by this Court.

## II. BACKGROUND

3. The Debtors files a voluntary petition for relief under Chapter 11, Subchapter V of Title 11 of the United States Code.

4. The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to Sections 1184, 1107(a) and 1108 of the Bankruptcy Code.

6. No trustee, examiner, or committee has been appointed in this case.

7. The Debtor's business consists of a legal practice consisting of mass tort and employee tax credit cases, and relies on a workforce of approximately 5 employees.

8. The Debtor acknowledges that certain creditors, including Blakemore/Burford and the Titan entities assert a security interest in the Cash Collateral, but the amount owed is disputed, unliquidated, and contingent.

9. The Debtor must fund payroll in the amount of approximately $25,742.78 on December 5, 2025, as well as related payroll taxes and benefits in the amount of $2021.15, totaling $27,763.93 in aggregate. These wages are for work performed during the pay period November 16, 2025 through November 28, 2025.

10. The Debtor currently has approximately $700,000 in creditor-advanced funds in its accounts (the "Cash Collateral").

11. There is currently a receiver in place appointed in a state court dispute who has access to the financial accounts and can disburse payroll with this Court's permission.

12. The Debtor maintains a receivable pool valued between $45 million and $55 million (the "Receivables").

III. RELIEF REQUESTED

13. The Debtor seeks entry of an interim order:

    a. Authorizing the Debtor's limited use of Cash Collateral to pay pre- and post-petition payroll obligations arising in the ordinary course of business and other essential operating expenses listed in the 21-day Interim Budget attached as *Exhibit 1*;

    b. Granting adequate protection to the Secured Lenders in the form of regular reporting and budget oversight; and

    c. Scheduling a final hearing on continued use of Cash Collateral on regular notice.

14. Emergency interim relief is required to avoid immediate and irreparable harm to the estate.

IV. REQUEST FOR AUTHORITY TO USE CASH COLLATERAL

15. By this Motion, the Debtor seeks authority to use the Cash Collateral to pay necessary operating expenses, including employee payroll and the Debtor's compensation, in accordance with the budget attached hereto as *Exhibit 1*.

16. The Debtor's use of Cash Collateral is necessary to fund its ongoing operations, including payment of employee wages and operating expenses.

17. Section 363(c)(2) of the Bankruptcy Code permits a debtor to use cash collateral with court authorization or with the consent of each entity with an interest in such cash collateral 11 USCS § 363.

18. "Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest." 11 USCS § 363.

19. Pursuant to Section 363(e) of the Bankruptcy Code, the Court shall condition the use of cash collateral as is necessary to provide adequate protection of the interest of the entity that has an interest in the cash collateral. 11 USCS § 363.

20. Federal Rule of Bankruptcy Procedure 4001(b) sets forth the procedures for obtaining authorization to use cash collateral. USCS Bankruptcy R 4001.

21. Local Bankruptcy Rule 4001-5 of the Eastern District of New York provides additional requirements for cash collateral motions, including provisions regarding investigation periods relating to waivers and concessions as to prepetition debt. E.D.N.Y. LBR 4001-5.

### A. Cash Collateral to pay Employee Wages

22. The payment of employee wages is necessary to maintain operations and preserve the value of the estate for the benefit of all creditors.

23. The Debtor's next payroll cycle occurs on December 4, 2025, and bi-weekly payroll obligations total $30,843.93 per pay period.

24. Debtor has five employees essential to maintaining the firm's operations. Their sudden loss would cause catastrophic client harm and the collapse of pending receivables.

25. Without authority to pay wages, salaries, and benefits, the Debtor will suffer immediate and irreparable harm, including: loss of employee confidence and the resignation of the critical remaining employees; disruption of operations and customer relationships; decline in revenue and accounts receivable; and erosion of the Secured Lender's collateral value.

### B. Cash Collateral to pay business expenses

26. The payment of operating expenses is necessary to maintain operations and maintain the value of the estate for all creditors.

27. Specifically, the Debtor seeks the authority to pay critical overhead expenses in the 21-day budget, attached as *Exhibit 1*.

24. The vendors listed in *Exhibit 1* provide essential services whose interruption would damage client matters. The loss of these accounts would immediately impair daily operations.

25. The accounts listed in *Exhibit 1* fund filing fees, medical records, digital platforms, and operational necessities, and it is critical that we pay minimal requirements so the accounts remain active during these proceedings.

26. Payment of these accounts is necessary to preserve estate value and prevent disruption.

27. The Debtor requests authority to maintain these accounts in the ordinary course of business.

C. **Cash Collateral to Pay Managing Attorney**

28. The Debtor respectfully moves for entry of an Order approving the compensation of Edward J. Lake, Esq., Managing Attorney of The Lake Law Firm.[1]

29. The proposed compensation is a base salary of $15,000 per pay period, which was previously agreed upon by Titan and Blakemore, the largest creditors of Debtor.

30. Mr. Lake has been receiving $15,000 per month as part of financing agreement with creditors Titan and Blakemore, who routinely approved and funded the agreed salary, but payments ceased upon disagreement over operational control wherein Mr. Lake threatened to file suit.

31. Mr. Lake is the originator, supervisor, and strategic driver behind the firm's $45-55 million receivables pipeline.

32. The firm cannot operate or maintain client obligations without his continued leadership.

---

[1] *See* Motion for Interim Relief to Pay Insider Compensation, filed contemporaneously with this motion.

## V. ADEQUATE PROTECTION FOR SECURED LENDERS

33. Section 363(e) of the Bankruptcy Code requires that a debtor provide "adequate protection" to secured lenders as a condition of using cash collateral.

34. The Debtor proposes the following adequate protection:

    a. Compliance with the attached 21-day budget, with regular reporting;

    b. Maintenance of the Debtor's business operations to preserve the value of the receivables; and

    c. Maintenance of insurance and other operational safeguards.

35. These protections preserve the Secured Lender's position and comply with requirements set forth under §§ 361 and 363.

36. The proposed adequate protection is fair and reasonable under the circumstances and sufficient to protect the interests of the creditors in the Cash Collateral.

## VI. THE RELIEF REQUESTED IS NECESSARY AND IN THE BEST INTERESTS OF THE ESTATE

37. Authorizing the Debtor to use Cash Collateral is in the best interest of all creditors because it preserves going-concern value.

38. Without such authority, the Debtor's business will be unable to function, destroying enterprise value and severely harming creditors.

39. Use of Cash Collateral to maintain operations aligns with the purposes of Chapter 11 and protects the value of the estate.

## VII. INTERIM RELIEF IS NECESSARY TO PREVENT IMMEDIATE AND IRREPARABLE HARM

40. Bankruptcy Rule 4001(b) permits interim relief where immediate use of cash collateral is necessary to avoid irreparable harm.

41. Given the Debtor's imminent payroll obligations, interim authorization is critical.

42. The requested relief is narrowly tailored, budgeted, and essential to maintaining the Debtor's operations.

## VIII. FINAL HEARING

43. The Debtor requests that the Court schedule a final hearing on this Motion and permit the Debtor to continue using Cash Collateral pending entry of a Final Order.

44. The Debtor will serve this Motion and the Interim Order on all required parties in accordance with Bankruptcy Rules 2002 and 4001.

## IX. WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

45. The Debtor requests that the Court waive the 14-day stay under Bankruptcy Rule 6004(h) to permit immediate use of Cash Collateral.

## X. CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter the Interim Order, schedule a final hearing, and thereafter enter the Final Order granting the relief requested herein and such other and further relief as the Court deems just and proper.

WHEREFORE, the Debtor respectfully requests that this Court enter an order:

a. Authorizing the Debtor to use Cash Collateral in accordance with the budget attached hereto as *Exhibit 1*;

b. Authorizing the Debtor to pay employee wages of $27,763.93 bi-weekly in the aggregate;

c. Authorizing the Debtor to receive compensation in the amount of $15,000 bi-weekly.

d. Authorizing the Debtor to provide adequate protection to secured lenders as set forth herein;

e. Scheduling a final hearing under Bankruptcy Rule 4001(b)(2); and

f. Granting such other and further relief as the Court deems just and proper.

Dated: December 3, 2025

Respectfully submitted,

Law Offices of Edward J. Lake, PC
d/b/a The Lake Law firm
Debtor

By: [signature]

Edward J. Lake, Esq NY
NY Bar No.: 2522555
Authorized Representative of the Debtor
and Attorney for the Debtor

270 West Main Street, Suite 3
Sayville, NY 11782
Phone: 888-525-3529
Fax: 917-893-4392
Email: edlakelaw@yahoo.com

# Exhibit 1

5:23 PM
11/04/25
Accrual Basis

**21- Day budget**
**Lake Law Firm**

| Type | Date | Num | Memo | Clr | Split | Debit | Credit | Balance | |
|---|---|---|---|---|---|---|---|---|---|
| Bill | 12/01/2025 | | In motion 12/1 | | Accounts Payable | 950.40 | | | credit card |
| Bill | 12/01/2025 | | Adobe | | Accounts Payable | 640.00 | | | credit card |
| Bill | 12/01/2025 | | Archeval | | Accounts Payable | 439.00 | | | credit card |
| Bill | 12/01/2025 | | FedEx (budgeted) | | Accounts Payable | 300.00 | | | credit card |
| Bill | 12/01/2025 | | Postage (budgeted) | | Accounts Payable | 200.00 | | | credit card |
| Bill | 12/01/2025 | | Zoho | | Accounts Payable | 1,160.28 | | | credit card |
| Bill | 12/01/2025 | | GoDaddy | | Accounts Payable | 300.00 | | | credit card |
| Bill | 12/01/2025 | | Microsoft | | Accounts Payable | 800.00 | | | credit card |
| Bill | 12/01/2025 | | Geekbox | | Accounts Payable | 351.00 | | | credit card |
| Bill | 12/01/2025 | | ChatGPT | | Accounts Payable | 22.00 | | | credit card |
| Bill | 12/01/2025 | | PreUNL | | Accounts Payable | 10.00 | | | credit card |
| Bill | 12/01/2025 | | ENF Tracers | | Accounts Payable | 250.00 | | | credit card |
| Bill | 12/01/2025 | | IRB Search | | Accounts Payable | 475.00 | | | credit card |
| Bill | 12/01/2025 | | Skip Tracing | | Accounts Payable | 350.00 | | | credit card |
| Bill | 12/01/2025 | | Transunion | | Accounts Payable | 1,000.00 | | | credit card |
| Bill | 12/01/2025 | | PACER | | Accounts Payable | 280.00 | | | credit card |
| Bill | 12/01/2025 | | CallEnq | | Accounts Payable | 343.34 | | | credit card |
| Bill | 12/01/2025 | | IBLI | | Accounts Payable | 250.00 | | | credit card |
| Bill | 12/01/2025 | | Regus | | Accounts Payable | 300.00 | | | credit card |
| Bill | 12/01/2025 | | Storage | | Accounts Payable | 400.00 | | | credit card |
| Bill | 12/01/2025 | | WPEngine | | Accounts Payable | 300.00 | * | | credit card |
| Bill | 12/01/2025 | | Humblefax | | Accounts Payable | 20.00 | | | credit card |
| Bill | 12/01/2025 | | Azure | | Accounts Payable | 807.50 | | | credit card |
| Bill | 12/01/2025 | | Dropbox | | Accounts Payable | 150.00 | | | credit card |
| Bill | 12/01/2025 | | LiLG_Computer | | Accounts Payable | 500.00 | | Check/ach | |
| Bill | 12/01/2025 | | Internet software | | Accounts Payable | 64.00 | | | credit card |
| Bill | 12/01/2025 | | General Liability insurance | | Accounts Payable | 300.00 | | check/ach | |
| Bill | 12/01/2025 | | Malpractice Insurance (monthly) | | Accounts Payable | 1,538.58 | | ach auto | |
| Bill | 12/01/2025 | | Lexis Nexis (monthly) | | Accounts Payable | 600.00 | | | credit card |
| Bill | 12/01/2025 | | Zoho Voice Minutes (monthly) | | Accounts Payable | 100.00 | | | credit card |
| Bill | 12/01/2025 | | Zoho Voice Telephony | | Accounts Payable | 300.00 | | | credit card |
| Bill | 11/01/2025 | | Angelo IT (monthly) | | Accounts Payable | 500.00 | | Check/ach | |
| Bill | 12/01/2025 | | Angelo IT (monthly) | | Accounts Payable | 500.00 | | Check/ach | |
| Total Period | | | | | | 14,471.10 | | | |
| **TOTAL** | | | | | | **14,471.10** | | | |

Projected payroll

| | | pay date 12/3/2025 12/5/2025 | pay date 12/17/2025 12/19/2025 | | pay date 12/31/2025 1/2/2026 |
|---|---|---|---|---|---|
| Anna Kamins | | $ 6,230.77 | $ 6,230.77 | $ | 6,230.77 |
| Grace Montealegre | | $ 5,826.92 | $ 5,826.92 | $ | 5,826.92 |
| Shelby Morales | | $ 4,307.69 | $ 4,307.69 | $ | 4,307.69 |
| Michelle Nowlin | | $ 3,846.15 | $ 3,846.15 | $ | 3,846.15 |
| Dubin & Assoc | | $ 5,531.25 | $ 5,531.25 | $ | 5,531.25 |
| Total Payroll | $    - | $ 25,742.78 | $ 25,742.78 | $ | 25,742.78 |
| Payroll Costs | 10.0% | $ 2,021.15 | $ 2,021.15 | $ | 2,021.15 |

Includes Workers comp, Disability, unemployment, FICA, Medicare and processing fees

| Total projected payroll costs | | $ 27,763.93 | $ 27,763.93 | $ | 27,763.93 |
|---|---|---|---|---|---|

| | |
|---|---|
| Total payroll Dec 1-Dec 31 2025 | $ 83,291.80 |
| Total projected expenses Dec 2025 | $ 14,471.10 |
| AMEX REPAYMENT (Nov) | $ 8,772.00 |
| AMEX REPAYMENT (Dec) | $ 8,772.00 |
| Total (Dec | $ 115,306.90 |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re: Law Office of Edward J. Lake, PC,
d/b/a The Lake Law Firm,

Debtor.                                                                    Case No. _____

Chapter 11 (Subchapter V)
-----------------------------------------------------------x

### PROPOSED INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, AND (III) SCHEDULING A FINAL HEARING

Upon the motion (the "Motion") of Law Offices of Edward J. Lake, PC, d/b/a The Lake Law Firm (the "Debtor"), as debtor and debtor-in-possession, for entry of an interim order authorizing the Debtor to use cash collateral pursuant to §§ 105, 361, 363, 1184, and 1187 of title 11 of the United States Code (the "Bankruptcy Code") to fund payroll and related obligations and to preserve the Debtor's ongoing operations; and the Court having jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334; and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having reviewed the Motion and any supporting declarations; and having held a hearing on _____, 2025 (the "Interim Hearing"); and due and sufficient notice having been provided under the circumstances; and it appearing that (i) authorization to use cash collateral is necessary to avoid immediate and irreparable harm to the Debtor's estate, its employees, and its going-concern value; and (ii) the adequate protection provided herein is sufficient to protect the interests of any entity with an interest in such cash collateral; and after due deliberation and good cause appearing THEREFOR, IT IS HEREBY ORDERED that the Motion is GRANTED on an interim basis as set forth herein; and it is further ORDERED:

1. that the Debtor is authorized, pursuant to §§ 105(a), 361, 363(c)(2), and 1184 of the Bankruptcy Code, to use "cash collateral," as defined in § 363(a), including all cash, funds in deposit accounts, proceeds of accounts receivable, and other cash equivalents in which the "Secured Parties" assert an interest; solely for the purpose of paying:

    a. accrued prepetition wages (subject to § 507(a)(4) limits),

    b. postpetition payroll,

    c. employer payroll taxes,

    e. health insurance premiums, HSA/FSA contributions, and benefit obligations,

    f. payroll processor fees, and

    g. employee-related expenses identified in the 21-day budget, in an amount not to exceed $ _5,000.00_ during the period from entry of this Order through 21days later (the "Interim Period");

2. that, as adequate protection for the Debtor's use of cash collateral, the Secured Partyies are granted: (a) weekly reporting for Debtor compliance with the proposed 21-day budget and this court's orders; (b) Maintenance of the Debtor's business operations to preserve the value of the receivables; and (c) Maintenance of insurance and other operational safeguards and it is further

3. that nothing in this Order shall constitute: (i) a finding regarding the validity, perfection, priority, or extent of any lien; (ii) an admission of liability; (iii) authorization to use cash collateral for any purpose other than those expressly provided herein; or (iv) a waiver of any rights, claims, or defenses of the Debtor, the Subchapter V Trustee, or any party-in-interest; and it is further

4. that the Debtor shall provide weekly cash-flow reports and payroll summaries to the Secured Parties and the Subchapter V Trustee during the Interim Period; and it is further

5. that the Debtor is authorized to take all actions necessary to implement the relief granted by this Order; and it is further

6. that objections to the entry of a final order granting the relief requested in the Motion shall be filed on or before _____ at :  p.m. (ET); and it is further

7. that a final hearing on the Motion (the "Final Hearing") shall be held on _____, 2025 at __:___ (ET), or as soon thereafter as counsel may be heard; and it is further

8. that this Interim Order shall remain in effect until the earlier of (i) entry of a further order of this Court, or (ii) expiration of the Interim Period; and it is further

9. that the Court retains jurisdiction with respect to all matters arising under or relating to the interpretation or implementation of this Order.


Dated: _____, 2025
Central Islip, New York


_____
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re: Law Office of Edward J. Lake, PC,
d/b/a The Lake Law Firm,

Debtor.                                                                                            Case No. _____

Chapter 11 (Subchapter V)
------------------------------------------------------------x

## DECLARATION OF EDWARD J. LAKE

I, Edward J. Lake, do hereby declare as follows:

### I. INTRODUCTION

1. I am the founder and principal of Law Offices of Edward J. Lake, PC d/b/a The Lake Law Firm ("Debtor" or "Firm"), the debtor and debtor-in-possession in this Subchapter V case.

2. I am fully familiar with the Debtor's financial affairs, operations, employees, pay obligations, and books and records.

3. I submit this Declaration in support of an Emergency Motion for Interim Relief to use cash collateral to pay employee payroll and firm operating expenses, as well as the Motion for Interim relief to continue my historical salary using the same cash collateral from which it has been paid for more than six months.

4. I make this Declaration based on personal knowledge, review of the Debtor's business records, and information from employees under my supervision.

5. Debtor is a reputable legal practice with a longstanding record of serving clients in mass tort litigation.

### II. BACKGROUND

6. Debtor entered into a series of financing agreements with certain creditors, including Blakemore[1] and several D.C. legal entities ("Titan")[2]. After a series of delays in the settlements of mass tort dockets, which were already impacted by COVID shutdowns, as well as a

---

[1] Blakemore is a subsidiary of Burford
[2] The fourteen "Titan" law firm include ACI Law Group LLP, ACI Talc Law Group LLP, ASK Law Group LLP, BHI Law Group LLP, Blue Chip Law Group LLP, ERC Law Group LLP, ERC Partners LLC, Justice Partners Group LLP, KS Law Group LLP, LRS Law Group, LLP, TC Law Group LLP, and Titan Law Group LLP. These law firm have a common ownership of Lee Melchionni and Sylvia Benito. Rick Solit, husband to Sylvia Benito, is a partner of two firms and has been instrumental in the financial agreements with Debtor.

government moratorium on ERTC payments, Debtor became unable to meet payroll and overhead costs in March 2024.

7. In March 2024, Debtor had an $18 million financing opportunity with Arena that would have alleviated the cashflow strain, but the Titan interfered with this opportunity. The Titan creditors, along with Blakemore seized upon Plaintiffs' financial vulnerability and unlawfully assumed control over the firm's operations and financial resources in exchange for the critical payment of payroll.

8. The Titan creditors repeatedly threatened to terminate funding, employing these threats as a means of intimidation intended to coerce Debtor into executing documents and acquiescing to their coercive and potentially unethical demands.

9. On March 13 2025, the Titan and Blakemore creditors committed to provide "Go-Forward Financing until such time as the Firm receives and/or holds the Lake Revenue sufficient to satisfy the Firm's necessary operational expenses." In exchange, the creditors demanded that a Chief Restructuring Officer be employed who controlled firm operations and answered directly to them.

10. On May 8, 2025, the creditors and Debtor entered into an addendum to this agreement, whereby "Lake shall receive a salary from The Lake Law Firm of $30,000 per month, payable in the first payroll of each month for his services to the Firm for a period of one year following the execution of this Addendum."

11. The creditors made repeated threats of withholding payroll or employment to exert increasing control over the law firm.

12. The creditors removed my name from the firm bank account and had decision-making authority over whether medical records could be ordered, vendors paid, and more.

13. The Titan creditors terminated almost all staff with no notice or severance. They also refused the firm permission to accept new cases or to allocate firm funds toward marketing, or additional staff.

14. I requested the firm pay for me to attend a mass tort CLE to obtain updates on our current dockets and learn about potential new dockets, but the Titan and Blakemore creditors denied by request, both stating that the firm is not taking new cases.

15. In July 2025, in a dispute between the partners of Titan, an Arbitrator found that one of the Titan legal entities was "not a proper law firm within the meaning of Rule 5.4" and called into question the law firm partners' legal capabilities, giving me great concern over their ability to manage my law firm, as well as the legality of our funding agreements.

16. Concerned about my legal and ethical obligations to my clients, I pushed back against their operational control of the firm.

17. After drafting a lawsuit and motion for protective order detailing my concerns about the operational control of the firm, I sent it to the Titan and Blakemore creditors, hoping that we could come to a mutual agreement regarding firm financing and operations. They asked for a few days to review the lawsuit and come up with a plan. Instead, they filed suit against the firm and launched a marketing attack against the firm, referring to it as a "ponzi scheme."

18. After receiving several excessive bills from the CRO appointed by Titan and Blakemore, I fired him and agreed to a receiver in his place. I also changed the job title of the firm CEO after she expressed concerns over her responsibilities and liabilities. After making these firm changes, Titan has refused further financing despite the March and May 2025 agreements, resulting in the firm's inability to pay payroll.

19. Debtor has disbursed more than $2 million to creditors in the past 18 months.

20. Despite the Debtor's good faith performance, the Titan and Blakemore creditors interfered with operations, withheld committed funding, attempted to dictate staffing, hiring, firing, settlement strategy, and marketing, and retaliated after Debtor challenged their conduct.

### III. SUBCHAPTER V STATUS AND ONGOING OPERATIONS

21. Several creditors, including Titan, Justice Partners, KS Law, and Blakemore, assert claims that are contingent, unliquidated, and subject to a bona fide dispute. These include disputed reconciliations, disputed fee-splits, disputed commissions, disputed servicing and participation agreements, and claims dependent on unadjudicated allegations of breach, fraud, overbilling, and nonperformance.

22. The Debtor elected to proceed under Subchapter V of Chapter 11 on December 2, 2025, pursuant to 11 U.S.C. §1182.

23. Based on my review of the Debtor's records, the Debtor's non-contingent, liquidated debts not subject to bona fide dispute total less than $3.4 million. The balance are contingent, unliquidated, or disputed and therefore excluded from the statutory debt limit.

24. Under Subchapter V, the Debtor remains a debtor-in-possession and continues to operate its business pursuant to §§1184 and 1107.

25. Continued operation of the Debtor's business, supported by the retention of its employees, is essential to the success of this Subchapter V reorganization.

26. Debtor is in the process of collecting letters or emails from creditors who prefer continued operations. Many of Debtor's operational creditors, including co-counsel and vendors, benefit directly from the firm's ongoing work, which generates the fees from which they are paid. I expect to supplement this declaration with supporting communications shortly.

27. Preservation of going-concern value is a primary objective of Subchapter V and is impossible without timely payment of staff.

### IV. STAFF AND THE CRITICAL NATURE OF PAYROLL

28. The Debtor currently employs five (5) employees perform critical functions essential to client communications, case administration, legal work, referral coordination, and day-to-day law firm operations.

29. The current employees are:
    Grace Monteleagre, Operations
    Anna Kamins, Attorney/ Director of Mass Torts
    Shelby Morales, ERC Attorney
    Michelle Nowling, Investigator/Legal Assistant
    Jeffrey Dubin, Accountant

30. Each employee is necessary to avoid client abandonment, preserve case continuity, and maintain referral partner relationships.

31. These employees are essential to maintaining operations, servicing clients, generating revenue, and preserving the value of the estate.

32. Payroll in the amount of $27,763.93 is due on December 5, 2025, and must be initiated on December 4, 2025.

33. Failure to pay these employees will cause immediate and irreparable harm to clients and will substantially diminish the value of the Debtor's contingent-fee receivables.

34. Payroll must be authorized immediately to avoid resignations and operational collapse.

35. A 21-day budget, filed with the Motion as *Exhibit 1*, includes firm wages, taxes, processing fees, and necessary operating expenses.

36. If payroll is not paid, employees will not report to work, operations will cease immediately, ongoing client work cannot be performed, clients will be harmed, and revenue will drop.

37. The loss of key staff would cause immediate irreparable harm, including the collapse of business operations, loss of clients, inability to reorganize under Subchapter V, destruction of going-concern value, and diminished recoveries to all creditors.

38. Subchapter V is designed to foster continuity of operations, which cannot occur if employees are unpaid.

### V.     CASH COLLATERAL TO PAY INSIDER SALARY

39. Prior to their cessation of funding, creditors Titan and Blakemore paid a biweekly salary to me, as managing attorney, in the amount of $15,000.00 per pay period.

40. My compensation was routinely approved and funded by the firm's creditors, who never objected until litigation commenced. This salary formed part of the ordinary course of business operations.

41. I am essential to the maintenance and continuation of the firm's legal work, including client supervision, settlement negotiation, intake management, compliance, and litigation decisions. Without my work, the going concern value of the firm would be substantially diminished.

42. The salary requested is reasonable, necessary, and limited to interim approval pending a full budget hearing. I respectfully request that the Court approve the continuation of my historical compensation to approve the estate.

43. A salary to me is necessary, as he is required to pay the Internal Revenue Service approximately $11,000.00 on the 28th of each month as part of a repayment agreement. This payment was not made in November, when the dispute with creditors arose.

### VI.     CASH POSITION, BUDGET, AND NEED FOR CASH COLLATERAL

44. The Debtor has prepared a 21-day interim budget, which accurately reflects projected ordinary course expenses.

45. The Debtor holds contingent-fee interests valued at $45–55+ million, including cases referred to qualified trial counsel.

46. Approximately 85% of matters are handled by referral firms but require active communications through Debtor staff. Staff assist with case prove-up, status updates, and client consultations regarding settlement disbursements.

47. Multiple settlements are expected in the next 90–180 days, making continued operation essential to preserving receivable value.

48. Despite obligations to fund all expenses, including payroll, pursuant to an agreement, creditors Titan and Blakemore claim a security interests in receivables, but both stopped funding after a dispute regarding control of operations resulted in Mr. Lake threatening a lawsuit.

49. Debtor currently has $406,527.83 in Santander commercial checking account and $512,419.04 in Santander money market account. Debtor has only $6,417.57 cash account, and thus requires use of cash collateral to satisfy payroll obligations.

50. Without the use of cash collateral, the Debtor will not be able to carry out its responsibilities under Subchapter V.

VII.    ADEQUATE PROTECTION FOR SECURED CREDITOR

51. To the extent that any secured creditor holds an interest in cash collateral, the Debtor proposes the following adequate protection:
    a. Weekly reporting of cash inflows, outflows, and variances;
    b. Preservation of collateral by maintaining operations and staff; and
    c. Continued insurance coverage.

52. These protections ensure the secured creditor's interest is safeguarded as required by §§361 and 363e.

53. The Protections are also consistent with Subchapter V's goal of supporting viable reorganizations through ongoing operation

VIII.    NEED FOR EMERGENCY INTERIM RELIEF

54. Payroll must be funded immediately to avoid severe operational disruption.

55. Bankruptcy Rule 4001(b)(2) permits interim relief where immediate use of cash collateral is needed to prevent irreparable harm.

56. The Debtor satisfies that standard because failure to timely pay payroll will destroy the value of the estate and the Debtor's ability to reorganize.

57. Immediate authorization is therefore necessary and appropriate pending a final hearing.

58. Use of cash collateral will preserve and enhance creditor recovery by preventing client attrition and operational shutdown.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 3, 2025 in Sayville, New York.

_____
Edward J. Lake, Declarant